```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF ARKANSAS
                          NORTHERN DIVISION
```

JAVON HENRY GARDNER                                              PLAINTIFF
ADC #141217

V.                      Case No. 3:22-CV-00061-BBM

MATTHEW HECHT, Detention Officer,
Greene County Detention Center; and
DANE BARNUM, Lieutenant,
Greene County Detention Center                                  DEFENDANTS

## **MEMORANDUM OPINION AND ORDER**[1]

### I.  INTRODUCTION

On March 10, 2022, Plaintiff Javon Henry Gardner ("Gardner") filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated in the Greene County Detention Center ("GCDC"). (Doc. 2). After screening of the Complaint, Gardner was allowed to proceed with his claims that: (1) Defendant Detention Officer Matthew Hecht ("Officer Hecht") subjected him to excessive force; and (2) Defendant Lieutenant Dane Barnum ("Lieutenant Barnum") failed to intervene. (Docs. 5, 6). Gardner brings his claims against Defendants in their individual and official capacities. (Doc. 2 at 2).

---

[1] By written consent of the parties, this case was referred to a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment, in accordance with 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. (Doc. 15).

Defendants filed a Motion for Summary Judgment, Statement of Undisputed Facts, and Brief in Support. (Docs. 34–36). Gardner filed an Affidavit and two Responses to the Motion for Summary Judgment. (Docs. 41, 45–46).

In one of his Responses, Gardner claimed that he had been unable to view the bodycam video submitted by Defendants in support of their Motion for Summary Judgment. (Docs. 38, 46). The video was resent to Gardner, and he was provided the opportunity to supplement his response by February 16, 2024. (Docs. 51–52).

Gardner has not filed a supplemental response, and his time to do so has expired. Thus, the issues are joined and ready for disposition.

## II.   FACTUAL BACKGROUND[2]

On January 24, 2022, Gardner got into a minor disagreement with Lieutenant Felisha Rowland ("Lieutenant Rowland").[3] (Doc. 2 at 4). Lieutenant Rowland accused the inmates in Gardner's barracks of "trading items for state trays," and Gardner tried to explain that "inmates were only sharing with inmates that didn't have anything." *Id.* After a few more exchanged words, Lieutenant Rowland told Gardner she was not going to argue with him and left the barracks. *Id.*

Shortly thereafter, a guard came to Gardner's cell and told him to "pack his property." *Id.* Gardner understood this to mean he was being transferred to a punitive

---

[2] The sources for these facts are Gardner's verified Complaint (Doc. 2); Lieutenant Barnum's affidavit (Doc. 34-1); Gardner's relevant medical records (Doc. 34-4); the bodycam video (Doc. 38); and Gardner's two affidavits (Doc. 41 at 2–4; Doc. 45 at 2–4).

[3] Lieutenant Rowland was previously dismissed as a party to this action. (Docs. 5, 6).

segregation cell. *Id.* at 5. According to Gardner, he was in the process of packing his property when Officer Hecht and Lieutenant Barnum approached his cell with another officer. *Id.*

Bodycam video captures what happened next. (Doc. 38). As the officers stand in the door of Gardner's cell telling Gardner to "grab his stuff," Gardner stands at the back of the cell, facing the officers, and arguing that he had done nothing wrong. *Id.* at 0:00:00–0:00:16. One officer warns that he is going to deploy a pepper ball if Gardner does not begin packing his property; Gardner responds that the officer needs to "turn on his camera." *Id.* at 0:00:16–0:00:23. The verbal argument continues for approximately one minute with Gardner stating at one point, "you can come and cuff me, but you can't pepper ball me for not grabbing my stuff." *Id.* at 0:00:00–0:00:59.

When an officer states that Gardner is being "hostile," Gardner places his hands on the back wall, looks over his shoulder and says, "come on bro." *Id.* at 0:00:59–0:01:16. The officers enter the cell, handcuff Gardner behind his back, and begin removing him from the cell as Gardner exclaims, "you ain't gotta be rough with me." *Id.* at 0:01:17–0:01:37. A brief struggle ensues with Gardner apparently twisting away from the officers. *Id.* at 0:01:38–0:01:40. Gardner is pushed against the wall outside the cell, and one of the officers tells Gardner that he needs to stop "tensing" up. *Id.* at 0:01:40–0:01:58.

After the officers regain control of the situation, they begin escorting Gardner down a set of stairs. *Id.* at 0:01:59–0:02:22. For the remainder of the trip to segregation, Officer Hecht has his arms wrapped firmly around Gardner's arms. *Id.* at 0:02:22–0:04:09. Because Gardner's hands remain handcuffed behind his back, his shoulders are pulled back, and his

arms are slightly lifted. *Id.* Gardner describes this as having his "arms hi-jacked behind his back." (Doc. 41 at 3; Doc. 45 at 3).

When they arrive at the segregation cell, Officer Hecht moves Gardner to the back of the cell, facing the wall, and attempts to remove the handcuffs. (Doc. 38 at 0:04:10–0:04:53). Throughout the process, Officer Hecht calmly tells Gardner that he needs to stop tensing up and not to be "squirrelly." *Id.* Gardner, with his head turned over his shoulder, states in a combative tone that he is "not tensing up" and "break my arm, bitch, that's what you do." *Id.* Officer Hecht explains that they are "trying to get these cuffs off you." *Id.*

Gardner then jerks away from Officer Hecht's grasp and turns to face the officers. *Id.* at 0:04:54. The officers force Gardner to the ground, face first. *Id.* at 0:04:54–0:05:47. The officers continue to try and remove the handcuffs while telling Gardner to keep his arms to his sides. *Id.* at 0:05:48–0:06:23. When both cuffs are removed, Gardner gets into the "pushup" position and tries to get up. *Id.* at 0:06:24–0:06:27. An officer pushes him back to the floor and forcefully says, "do not try to get up." *Id.* 0:06:27–0:06:28.

Several times throughout the video, including while he was face down on the cell floor, Gardner calls out to "Dane"—Lieutenant Barnum—asking if he was "seeing this shit." *Id.* at 0:02:17, 0:02:33, 05:02. Lieutenant Barnum tells him to comply with the other officers' commands and "stay down." *Id.* at 0:06:32. When Gardner finally complies with the officers' commands to put his hands out to his sides, the officers leave the cell. *Id.* at 0:06:29–0:07:17. As they are leaving, Gardner claims that Officer Hecht "broke his hand." *Id.* at 0:07:05.

According to Gardner's GCDC medical records, he did not immediately seek medical attention following the January 24, 2022 incident. (Doc. 34-4 at 10). On February 3, 2022, Gardner requested to be seen for an unrelated dental issue. *Id.* at 10–11. Then, on February 7, 2022, Gardner sought medical treatment for "achy" right-wrist pain. *Id.* at 19–20. The examination revealed full range of motion with no noted deformity, discoloration, or swelling. *Id.*

### III. DISCUSSION

In their Motion for Summary Judgment, Defendants argue they are entitled to qualified immunity, in their individual capacities, because their actions did not violate a clearly established constitutional right. (Doc. 35 at 5–11). They also argue they are entitled to summary judgment, in their official capacities, because Plaintiff has provided no evidence that GCDC had an unconstitutional use-of-force policy. *Id.* at 11–13.

#### A. Standard of Review

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* FED R. CIV. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

## B. Qualified Immunity—Excessive Force

To determine if Defendants are entitled to qualified immunity, the Court must conduct a two-prong inquiry into whether Gardner has demonstrated: "(1) a deprivation of a constitutional right, [that was] (2) … clearly established at the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021). The Court will consider each prong, in turn.

Because Gardner was a convicted prisoner on January 24, 2022, his excessive force claim against Officer Hecht falls under the Eighth Amendment's prohibition on cruel and unusual punishment.[4] *Peterson v. Heinen*, 89 F.4th 628, 634 (8th Cir. 2023). In determining whether Defendant Hecht's actions violated Gardner's Eighth Amendment right to be free from excessive force, the core judicial inquiry is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (citations omitted). Factors that inform this inquiry are: (1) "whether there was an objective need for force," (2) "the relationship between any such need and the amount of force used," (3) "the threat reasonably perceived by the correctional officers," (4) "any efforts by the officers to temper the severity of their forceful response," and (5) "the extent of the inmate's injury." *Ward v. Smith*, 844 F.3d 717, 721–22 (8th Cir. 2016) (citation omitted).

---

[4] On January 10, 2022, Gardner pleaded guilty to one count of committing a terroristic act and was sentenced to 108 months' imprisonment in the ADC. *See State v. Javon Henry Gardner*, No. 28CR-21-873 (Greene Cnty., Ark.) (Gardner's state court records are publicly available on the Arkansas Judiciary's website: https://caseinfo.arcourts.gov/opad) (last visited Mar. 25, 2024); *see also* (Doc. 2 at 3) (Gardner's Complaint, acknowledging that he was "serving a sentence as a result of a judgment of conviction" at the time of the January 24, 2022 incident).

Gardner claims that Officer Hecht "overly-aggressively restrained" him, "jacked his arms up behind him," "ran" him into the wall, "slammed [him] onto a concrete floor," and "aggressively uncuffed" him. (Doc. 2 at 5–6; Doc. 45 at 2–3). He further asserts that he was "never aggressive or violent," "was compliant and submissive" throughout the whole incident, and that Officer Hecht's actions were "without cause." (Doc. 2 at 5–6; Doc. 45 at 2–3).

The video of the incident tells a different story.[5] Throughout the incident, Gardner is agitated and combative. He first refuses to comply with the officers' orders to pack his belongings and later to place his hands by his side and stay on the ground. Although he volunteered to have handcuffs placed on him, he repeatedly pulled away and twisted while the officers were attempting to escort him to isolation.

It also appears that Gardner was "slammed" into the wall by an officer other than Hecht. *See* (Doc. 38 at 0:01:40–0:01:58). But, assuming, for the sake of argument, that it was Officer Hecht, the video shows that Gardner was, at most, shoved against the wall after a brief struggle between Gardner and the escorting officer. Likewise, Gardner's arms were only firmly secured by Officer Hecht after the struggle, and Gardner was only taken to the ground after he twisted away from the officers and tried to confront them. The video of the incident confirms that the amount of force used was reasonable under the circumstances,

---

[5] At the summary judgment stage, the Court may not make credibility determinations or weigh evidence in favor of one party's version against the other. *Coker v. Arkansas State Police*, 734 F.3d 838, 843 (8th Cir. 2013). However, the Court may disregard facts provided by a party which are "so utterly discredited by the record that no reasonable jury could [] believe[] him." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

was applied in a good-faith effort to maintain or restore discipline, and nothing in the video suggests that Hecht applied force maliciously or sadistically with the intent to injure Gardner.

Gardner claims that he had "swelling to the face" after being shoved against the wall; the video, however, reveals no such swelling, and Gardner sought no medical treatment for a facial injury. (Doc. 45 at 2). Moreover, Gardner's claim that he suffered from "wrist and elbow pain," *id.*, following the use of force, is belied by the fact that he did not seek immediate medical attention. Instead, when he finally sought medical treatment for "achy" right wrist pain on February 7, 2022, the examination revealed a full range of motion with no visible injury. (Doc. 45 at 10–11). Although Gardner does not need to demonstrate a "significant injury" to maintain his excessive force claim, the lack of discernable injury is relevant to determining whether Officer Hecht applied force "maliciously and sadistically" to cause harm. *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010).

Based on the record, there is no *genuine* issue of *material* fact, and no reasonable juror could find that Officer Hecht maliciously and sadistically used force against Gardner during the January 24 incident. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). To the contrary, the bodycam video establishes that Gardner was agitated, argumentative, and frequently pulling away from Officer Hecht; Officer Hecht used only the force necessary to maintain control of the situation, successfully escort Gardner to segregation, and remove his handcuffs.

In sum, the force used by Officer Hecht was not excessive under the Eighth Amendment. Because the Court finds that no constitutional violation occurred, Officer Hecht is entitled to qualified immunity, and the Court "need not undertake an analysis into whether the right in question was clearly established." *Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018) (citing *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017)).

### C. Failure to Intervene

Gardner also brings a failure-to-intervene claim against Lieutenant Barnum for standing by during Officer Hecht's use of force. "A law enforcement officer who knows another officer is using excessive force has a duty to intervene." *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) (citation omitted). However, "a failure-to-intervene claim may not prevail in the absence of a showing of excessive force." *Zubrod*, 907 F.3d at 580 (citing *Hicks v. Norwood*, 640 F.3d 839, 843 (8th Cir. 2011)); *see also Peterson v. Heinen*, 89 F.4th 628, 640 (8th Cir. 2023). Because no excessive force was used by Officer Hecht, Barnum is entitled to summary judgment on Gardner's failure-to-intervene claim.

### D. Official-Capacity Claims

Finally, "[b]ecause there is no cognizable constitutional violation, there is no basis for [official-capacity] liability." *Brabbit as Tr. for Bild v. Capra*, 59 F.4th 349, 354 (8th Cir. 2023); *see also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("Morris's claims against the defendants in their official capacities, which are treated as claims against the municipality, fail for lack of a constitutional violation."). Gardner's claims against Hecht and Barnum, in their official capacities, are therefore dismissed.

## IV. CONCLUSION

IT IS THEREFORE ORDERED THAT:

1.  Defendants' Motion for Summary Judgment (Doc. 34) is GRANTED.

2.  Gardner's individual-capacity excessive-force claim against Officer Hecht, individual-capacity failure-to-intervene claim against Lieutenant Barnum, and official-capacity claims are DISMISSED, with prejudice.

3.  Judgment will enter accordingly.[6]

DATED this 26th day of March, 2024.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] All Gardner's other claims were dismissed without prejudice. (Docs. 6, 9).